IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WALTER L. BREWER,

     Plaintiff,                          No. CIV S-06-1896 EFB

     vs.

MICHAEL J. ASTRUE,               <u>ORDER</u>
Commissioner of Social Security,[1]

     Defendant.
_____/

     Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). For the reasons that follow, plaintiff's motion for summary judgment is denied, and the Commissioner's cross-motion for summary judgment is granted. The Clerk is directed to enter judgment for the Commissioner.

////

////

////

---

[1] On February 12, 2007, Michael J. Astrue was sworn in as Commissioner of Social Security, replacing Jo Anne B. Barnhart, the original defendant herein. Pursuant to 42 U.S.C. § 405(g) and Fed. R. Civ. P. 25(d)(1), Michael J. Astrue is substituted as the defendant in this action.

1

## I. BACKGROUND

Plaintiff, born November 15, 1950, applied for disability benefits on June 11, 2003. Administrative Transcript ("AT") 30. Plaintiff alleged he was unable to work since November 20, 2002, due to "lower back (L-5 & L-5 area), pain in knees and burning pain in feet, [and] color blind[ness]." AT 58, 62.

On December 20, 2004, following a hearing before administrative law judge ("ALJ") Antonio Achieved-Torres, the ALJ found that plaintiff was not disabled. AT 27-36. On September 23, 2005, the Appeals Council remanded the case to the same ALJ for further proceedings to "evaluate the claimant's receipt of a disability pension from the Department of Veterans Affairs."[2] AT 200. A supplemental hearing was held on February 2, 2006, and in a decision dated March 23, 2006, the ALJ again found that plaintiff was not disabled.[3]

---

[2] Plaintiff served in the Marine Corps from January 1969 to December 1970. AT 63, 99. He was awarded a "nonservice connected" disability pension from the VA on April 29, 2004, effective November 26, 2003. AT 99.

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.* Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.* Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. *See* 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

(cont.)

2

In particular, the ALJ made the following findings:

> 1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 3. The claimant's chronic low back pain, status post lumbar surgery times three and degenerative osteoarthritis of the lumbar spine are considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).
>
> 4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> 5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.
>
> 6. The claimant has the following residual functional capacity: lift 20 pounds occasionally and 10 pounds frequently, walk/stand six hours, sit six hours, and occasionally perform postural activities (these are supported by his chronic low back pain, status post lumbar surgery times three and degenerative osteoarthritis of the lumbar spine), and he has no manipulative, visual, communicative, mental or environmental limitations.
>
> 7. The claimant's past relevant work as motel front desk clerk did not require the performance of work-related activities precluded by his residual functional capacity (20 CFR § 404.1565).
>
> 8. The claimant's medically determinable chronic low back pain, status post lumbar surgery times three and degenerative osteoarthritis of the lumbar spine do not

---

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Bowen*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

3

>   prevent the claimant from performing his past relevant work.
>
> 9.  The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR § 404.1520(f)).

AT 21.

On June 23, 2006, the Appeals Council denied plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. AT 5-7.

**II. ISSUES PRESENTED**

In his motion for summary judgment, plaintiff presents five issues challenging the Commissioner's decision. First, he alleges that the ALJ failed to consider all of his impairments at step two of the sequential evaluation. Second, plaintiff alleges that his degenerative osteoarthritis and degenerative disc disease meet or equal the criteria under 1.04A in the Listing of Impairments. Third, plaintiff asserts that the ALJ failed to properly evaluate and develop the record with regard to plaintiff's disability pension from the Department of Veterans Affairs. Fourth, plaintiff alleges that the ALJ failed to credit plaintiff's testimony as to the nature and extent of his limitations. Finally, plaintiff asserts that the ALJ erred by stopping the sequential evaluation at step four and failing to call a vocational expert to assess the effect of plaintiff's non-exertional limitations on his ability to work.

**III. LEGAL STANDARDS**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir.1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is

more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## IV. ANALYSIS

### A. Step Two Analysis

Plaintiff argues that the ALJ failed to consider all his impairments at step two of the sequential evaluation. In particular, he asserts that the ALJ failed to consider his lower lumbar degenerative disc disease with multilevel disc desiccation, disc space narrowing, moderate diffuse disc bulges, burning paresthesia of the knees, feet and tailbone, bilateral bunions, chest pain, shoulder pain, ulnar nerve neuropathy, wrist tendinitis, hypertension, vitamin B-12 deficiency with positive antiparietal cell abnormality, tinnitus, angina, color blindness and depression.

"The step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The purpose is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. *Bowen*, 482 U.S. at 153.

At step two of the sequential evaluation, the ALJ determines which of claimant's alleged impairments are "severe" within the meaning of 20 C.F.R. § 404.1520(c). A severe impairment significantly limits a person's physical or mental ability to do basic work activities. *Id.* "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight

5

abnormalities) that has no more than a minimal effect on the ability to do basic work activities." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (citing Social Security Ruling ("S.S.R.") No. 96-3p (1996)).

If a severe impairment exists, all medically-determinable impairments must be considered in the remaining steps of the sequential analysis. 20 C.F.R. § 404.1523. The ALJ "must consider the combined effect of all the claimant's impairments on her ability to function, without regard to whether each alone [i]s sufficiently severe." *Smolen*, 80 F.3d at 1290; 20 C.F.R. § 404.1523.

Here, the ALJ found plaintiff's "chronic low back pain, status post lumbar surgery times three and degenerative osteoarthritis of the lumbar spine" to be severe impairments pursuant to § 404.1520(c). AT 21. The ALJ's finding focuses on plaintiff's lower back conditions, the inability of surgery to completely resolve them, and the resultant chronic pain. Though the ALJ did not explicitly identify plaintiff's disc desiccation, disc space narrowing, and moderate, diffuse disc bulges as uniquely severe impairments, his finding of "chronic low back pain, status post lumbar surgery times three and degenerative osteoarthritis of the lumbar spine," sufficiently reflects plaintiff's lower back impairments, which were considered throughout the sequential evaluation.

The ALJ thoroughly discussed the medical evidence concerning plaintiff's back impairments, including his varied attempts at treatment. AT 16-19. He explicitly noted that x-rays from April 2003 revealed lower degenerative disc disease, and that an MRI in June 2003 showed bulging discs at L3-4 and L4-5, with mild to moderate stenosis at L3-4. AT 16. The ALJ considered the specific medical findings showing disc bulges and narrowing, and summarized them as "severe chronic back pain" and "severe degenerative osteoarthritis of the lumbar spine." AT 21. These severe lower back impairments affect plaintiff's ability to work by producing pain and limiting his range of motion, as acknowledged by the ALJ. AT 16-17, 19.
////

This was reflected in the opinion of examining physician, Dr. Matthew Mitchell, M.D., who, in addition to reviewing plaintiff's medical records, performed a complete orthopedic evaluation of plaintiff in October 2005. AT 308-313. Dr. Mitchell diagnosed plaintiff with "low back pain," noting that he had undergone surgery, physical therapy and epidural steroids, but still complained of lower back pain. AT 312. Based on his objective findings during the examination, Dr. Mitchell found that plaintiff had a diminished range of motion in the lumbar spine. AT 313.

The ALJ considered this opinion and the other medical records documenting plaintiff's back impairments throughout the sequential evaluation. In particular, he relied on these records and opinions in analyzing whether plaintiff met or equaled a listing at step three, and in determining plaintiff's RFC.

The ALJ's ultimate finding at step two with regard to plaintiff's severe lower back impairments adequately reflects his physical condition, and is supported by substantial evidence in the record. The ALJ did not err by declining to explicitly identify plaintiff's disc desiccation, disc space narrowing, and moderate, diffuse disc bulges as separate, discrete severe impairments at step two. Plaintiff's argument in that regard ignores the narrative discussion in the ALJ's written analysis that specifically acknowledges and considers those very conditions. AT 17. Moreover, the plaintiff prevailed at this step. The ALJ found that plaintiff's post lumbar surgery low back pain and degenerative arthritis of the lumbar spine constitute a severe impairment. That the language at the end of the narrative discussion did not repeat each and every medical finding already discussed makes no difference. The ALJ found for plaintiff at this step and appropriately moved on to the remaining steps to determine the plaintiff's residual functional capacity and whether plaintiff was precluded from performing his past relevant work. Plaintiff does not explain what a more specific finding at step two with regard to his lower back impairments would accomplish, if the court were to remand for that purpose. None of the medical evidence was excluded from the remaining analysis of plaintiff's work limitations.

Likewise, there was no error in the ALJ declining to define the burning in plaintiff's knees, feet and tailbone as severe impairments. The ALJ reviewed plaintiff's medical records showing complaints about this condition to his doctors, but noted that the doctors were unable to determine its etiology. AT 16, 18, 170. Plaintiff's doctors noted that it was possible these burning sensations were a result of auto-immune neuropathy caused by his anti-parietal cell antibody disease (for which he was treated with vitamin B-12 injections), but frequent tests revealed no evidence of neuropathy. AT 268, 126, 277. Similarly, the medical records showed that past tests for diabetes, another possible cause for the burning, were negative. AT 276.

A claimant's description of his own symptoms is insufficient to establish an impairment. An impairment is established by medical evidence consisting of signs, symptoms and laboratory findings. *See* 20 C.F.R. § 404.1528.[4] In the absence of such evidence, the ALJ did not err by declining to find that these burning sensations constituted severe impairments.

With regard to plaintiff's depression, the ALJ determined that this condition was not severe, and the evidence bears this out. First, there is no medical evidence that plaintiff was depressed for longer than five months. He first reported depression in May 2005, in connection with a separation from his wife, and was given a trial of Zoloft. AT 274-75. In July 2005, it was noted that his mood was depressed and he continued with anti-depressants. AT 263, 266-67. In September 2005, he reported that his mood was fair and the doctor noted it was under control with medication. AT 244. *See Montijo v. Sec'y of HHS*, 729 F.2d 599, 600 (9th Cir. 1984) (a condition which can be controlled or corrected by medication is not disabling).

In November 2005, state agency physician L.J. Gottschalk, M.D. opined that plaintiff had no severe mental impairment. AT 236. There is no contrary medical opinion in the record.
////

---

[4] To the extent plaintiff alleged limitations resulting from these painful symptoms, those allegations are properly considered in assessing the plaintiff's credibility and his functional limitations. *See* SSR 98-6p.

8

Based on this evidence, the ALJ found that plaintiff did not have a severe mental impairment. AT 20. This finding was supported by substantial evidence, as cited above, and plaintiff fails to explain how his depression had any adverse impact on his ability to perform work-related activities. *See Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998) (the burden is on plaintiff at steps two through four of the sequential evaluation to prove disability).

The ALJ also correctly concluded that plaintiff's color blindness, by itself, was not a severe impairment within the meaning of the regulations. He did, however, consider all of plaintiffs conditions in combination and, as noted, found for plaintiff at that step. Although the ALJ rather curiously commented that there was "minimal evidence of treatment" for this condition,[5] he also noted that plaintiff had been able to work in the past despite his color blindness and that the consultative examiners did not identify any work-related limitations from this condition. AT 19, 20. Although plaintiff indicated he was once turned down for a job in a paper factory due to his inability to distinguish between certain colors, the record also shows that he had several other jobs in which his color blindness was not a problem. AT 20, 63. But these arguments pertain to subsequent steps of the analysis. The inquiry at step two is whether a claimant has an impairment that significantly affects his ability to perform basic work-related activities, not to identify unique jobs which he may be unable to do. *See* 20 C.F.R. § 404.1520(c). The ALJ considered all impairments, both the significant and non-significant, at this step and he found in plaintiff's favor. There was no error at step two with regard to consideration of plaintiff's color blindness.

Finally, plaintiff claims that the ALJ failed to consider his bilateral bunions, chest pain, shoulder pain, ulnar nerve neuropathy, wrist tendinitis, hypertension, vitamin B-12 deficiency with positive antiparietal cell abnormality, tinnitus, and angina at step two of the evaluation.

////

---

[5] Color blindness is a genetic condition. *See* Merck & Co., *The Merck Manual of Diagnosis and Therapy* 871 (18th ed. 2006).

9

1  Plaintiff, however, offers no explanation as to how any of these symptoms or conditions affect
2  his ability to perform basic work-related activities. A mere recitation of medical diagnoses does
3  not demonstrate how each of the conditions impacts plaintiff's ability to engage in basic work
4  activities. The court will not assume plaintiff's burden in this regard.

5  In any event, the record shows that the ALJ did discuss these conditions in reviewing the
6  medical evidence, and the court finds no error in his analysis at step two.

**B.  Listing 1.04A**

8  Plaintiff next contends that he meets Listing 1.04A (disorders of the spine) based on his
9  degenerative lumbar spinal problems.

10  The Social Security Regulations include a "Listing of Impairments," comprised of
11  various impairments and/or diseases that are severe enough to preclude a person from
12  performing gainful activity. *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990); 20 C.F.R.
13  § 404.1520(d). Conditions described in the listings are considered so severe as to be irrebuttably
14  presumed disabling. 20 C.F.R. § 404.1520(d). In meeting or equaling a listing, all the
15  requirements of that listing must be met. *Key v. Heckler*, 754 F.2d 1545, 1550 (9th Cir. 1985).
16  If a claimant's impairment or combination of impairments meets or exceeds a "listing," no
17  specific finding is necessary as to the claimant's ability to perform his or her past relevant work
18  or any other jobs. 20 C.F.R. § 404.1520(d).

19  A mere diagnosis of a listed impairment is not sufficient. Specific findings included in
20  each listing also must be met. *See Key*, 754 F.2d at 1550 (9th Cir. 1985). Alternatively, other
21  diagnostic tests, or the combined effects of various conditions, may demonstrate the "equivalent"
22  of the specific required findings. *See, e.g., Sullivan v. Zebley*, 493 U.S. 521, 531 (1990); *Marcia
23  v. Sullivan*, 900 F.2d 172 (9th Cir. 1990). In sum, however, unless an impairment is as severe as
24  and has lasted as long as described in the listing, a person is not presumptively disabled. *Young*,
25  911 F.2d at 183.

26  ////

Listing 1.04A requires:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscles weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

Pt. 404, Subpt. P, App. 1.

The medical evidence does not support plaintiff's assertion that he meets all the requirements of Listing 1.04A. In particular, there is no evidence of motor loss accompanied by sensory or reflex loss. The examining physicians found plaintiff's muscle bulk and tone to be normal and his motor strength to be within normal limits.[6] AT 105, 170, 312. Even the examining orthopedist who noted a diminished range of motion in plaintiff's lumbar spine and found his strength to be slightly below normal opined that plaintiff was still able to sit, stand and walk for six hours per day and could lift twenty pounds occasionally and ten pounds frequently. AT 313.

Moreover, nerve conduction studies showed normal results, and plaintiff's reflexes were repeatedly shown to be normal and intact. AT 170, 277, 312, 105 ("claimant has intact appreciation of soft touch, temperature, pin, and vibration sense in the upper and lower extremities."). Further, although Dr. Mitchell noted positive results from the straight-leg raising test, Dr. McIntire noted negative results. *See* AT 104.

Plaintiff argues, unavailingly, that even if he does not meet all the requirements of Listing 1.04A, his impairment nonetheless equals that listing when considered in connection with his obesity.

---

[6] Examining orthopedist, Dr. Steve McIntire, rated plaintiff's muscle strength as 5/5 (i.e., normal), while Dr. Matthew Mitchell rated it as 4/5. AT 105, 312. A Veteran's Administration doctor rated his motor strength as 5/5. AT 170. Strength is graded on a scale of zero to five, with zero showing no visible muscle contraction, and five showing normal strength. A four is assigned to results showing movement against resistance supplied by the examiner. *See The Merck Manual* 1751.

11

Social Security Rule 02-01p provides:

> Because there is no listing for obesity, we will find that an individual with obesity "meets" the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing. We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing. For example, obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing.

There is no evidence that plaintiff's obesity had any impact on his lower back conditions, and plaintiff's unsupported allegations in this regard fail to show otherwise. Indeed, the only two doctors who examined plaintiff and opined on his ability to work noted his height and weight, yet nonetheless concluded he was capable of performing light work. AT 313, 105-06.

In light of this substantial evidence, the ALJ's finding that plaintiff did not meet or equal the criteria of Listing 1.04A was not in error and should not be disturbed.

**C.  Veteran's Affairs Disability Determination**

Plaintiff's case was previously remanded back to the ALJ by the Appeals Council for consideration of his receipt of a disability pension from the from the Department of Veterans Affairs ("VA"). Plaintiff alleges that the ALJ erred on remand by failing to gather more detailed information about the pension, given the Ninth Circuit's holding in *McCartey v. Massanari*, 298 F.3d 1072 (9th Cir. 2002).

In *McCartey*, the Court of Appeals remanded for an award of benefits where the ALJ failed to mention, let alone consider, the fact that the VA had rated the claimant as eighty percent disabled. The Court noted the similarities between the disability programs, and held that an ALJ "must ordinarily give great weight to a VA determination of disability." *Id.* at 1076. However, the Court also noted that each program's respective criteria for determining disability are not identical and that a "VA rating of disability does not necessarily compel the SSA to reach an identical result." *Id.* Accordingly, the Court held that an "ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by

12

the record." *Id.*

Here, the ALJ considered plaintiff's VA pension on remand. He addressed plaintiff's "entitlement letter," dated April 28, 2004, which notified plaintiff that he was to receive a pension. AT 17. The ALJ gave minimal weight to the award letter because it did not identify the reasons for the disability, and did not explain what clinical and diagnostic findings were used to arrive at the award. *Id.* Further, the letter did not document what percentage the award entailed. Finally, he found it inconsistent with the opinions of the consultative examining physicians who found plaintiff essentially capable of light work.

The ALJ correctly described the April 28, 2004, letter as lacking details about the pension or why it was awarded. AT 99-101. However, the record shows that plaintiff's February 18, 2004, medical examination at the VA medical clinic was conducted for the purpose of determining his VA disability claim. AT 167. The examining physician specifically noted that the examination concerned his "claim for an original nonservice-connected pension." AT 167. Further, the examiner's report addressed each of the seven bases underlying his claim for the pension: (1) back injury; (2) knee condition; (3) color blindness; (4) right leg injury; (5) burning in tailbone area; (6) left foot injury; and, (7) burning sensation in the soles of his feet. AT 167-69.

The VA physician diagnosed plaintiff with chronic low back pain, burning paresthesia of the knees, soles of the feet, and tailbone area, etiology unknown, color blindness, "status post right knee surgery, resolve with sequelae," and "bilateral bunions symptomatic on the left." AT 170.

Although it is unclear which of these diagnosis served as the basis for the VA's ultimate determination of disability, and what percentage disability that award reflected,[7] the ALJ still gave persuasive, specific, and valid reasons for according the VA determination minimal weight.

---

[7] *See* 38 U.S.C. § 1155 (VA rates disability as a percentage loss of earning power).

13

Specifically, he noted that the determination of disability was inconsistent with the opinions of examining orthopedists, Drs. Mitchell and McIntire, who found plaintiff capable of performing light work. AT 17. *See Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (An examining physician's opinion based on independent clinical findings can constitute substantial evidence.). Further, he noted that the VA medical records did not contain clinical or diagnostic findings sufficient to support a finding of disability under the Social Security Administration's standards. *Id.*

Setting aside for a moment the ALJ's articulation of specific, valid, and persuasive reasons for according the VA determination minimal weight, remand on this issue would be futile in any event. Assuming the court ordered the ALJ to collect further records regarding the percentage of the award and the reasoning underlying it, as plaintiff requests, and assuming such records exist, none of that would alter the existence of substantial evidence already in the record that supports the ALJ's finding that plaintiff was essentially capable of performing light work. The ALJ has already considered the medical evidence underpinning the VA award, and his findings should remain undisturbed pursuant to the substantial evidence standard.

**D. Credibility**

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. *See, e.g., Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. *Albalos v. Sullivan*, 907 F.2d 871, 873-74 (9th Cir. 1990); *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors,

medication, treatment and functional restrictions. *Id.* at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

"Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

Here, the ALJ partially discounted plaintiff's testimony, finding him to be less than fully credible. AT 18. He noted that plaintiff's testimony at the hearing was inconsistent with statements in the medical record. AT 18-19. For example, although plaintiff testified that antidepressants were not helping his mood swings, AT 387, the record shows his depression was controlled with medication. AT 244.

The ALJ also cited the comprehensive orthopedic exam performed by examining physician, Dr. Mitchell, which revealed only slightly diminished motor strength in the lower extremities and a partially decreased range of motion of the back. AT 19. Plaintiff reported to Dr. Mitchell that the pain he suffered was mostly in his low back and only occasionally in his tailbone. AT 308. Despite these limitations, Dr. Mitchell opined that plaintiff was essentially capable of performing light work, including sitting, standing, and walking for six hours per day. AT 313. The ALJ noted that this assessment contrasted with plaintiff's testimony that he could only walk one block, and stand and sit for ten minutes at a time. AT 378-79. The ALJ also noted that plaintiff's back pain was effectively treated with morphine, which he found further undermined plaintiff's allegations of severe physical limitations. AT 19, 242, 248, 263. In addition, the ALJ pointed to the only other medical opinion in the record by a physician who examined plaintiff, Dr. McIntire, which was consistent with Dr. Mitchell's opinion that plaintiff was capable of performing light work despite his impairments. AT 18, 105-06.

1    Based on the forgoing evidence, the ALJ found plaintiff only partially credible. He
2 articulated clear and convincing reasons to support that finding, which were supported by the
3 record. Accordingly, his finding will not be disturbed.

**E. Ending the Evaluation at Step Four**

Finally, plaintiff argues that the ALJ erred by stopping the sequential evaluation at step four, where he found that plaintiff could perform his past relevant work as a motel front desk clerk. Plaintiff argues that the ALJ should have at least called a vocational expert to address plaintiff's alleged exertional and non-exertional limitations.

At step four in the sequential evaluation process, the claimant bears the burden of showing that he can no longer perform his past relevant work. *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Id.* "This is done by looking at the "residual functional capacity and the physical and mental demands of the claimant's past relevant work." *Id.* at 844-45 (internal citations and quotations omitted).

Significantly, plaintiff does not allege that the ALJ's analysis at step four was flawed. Rather, he argues that the error was in not obtaining a vocational expert or proceeding to step five. This argument is not well taken. Where a claimant is capable of performing his past relevant work, he is not disabled, and the ALJ need not proceed to step five of the analysis. *See* 20 C.F.R. § 404.1560(b)(3).

Here, the ALJ determined that plaintiff was capable of performing his past relevant work as a motel front desk clerk, and was not required to obtain the services of a vocational expert or proceed to step five. The use of a vocational expert at step four is not mandatory. *See* 20 C.F.R. § 404.1560(b)(2) ("In determining whether you can do your past relevant work [w]e will ask you for information about work you have done in the past. We may also ask other people who know about your work [and we] may use the services of a vocational expert.").

////

16

1	Here, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to
2 "lift twenty pounds occasionally and ten pounds frequently, walk/stand six hours, sit six hours,
3 and occasionally perform postural activities." AT 20. He further concluded that plaintiff had no
4 manipulative, visual, communicative, mental or environmental limitations. *Id.* This
5 determination was based on the opinions of examining physicians Drs. McIntire and Mitchell,
6 and was not contradicted by any other medical opinion in the record. AT 105-06, 313.
7	Although the ALJ did not specifically discuss the physical and mental demands of
8 plaintiff's past work as a motel front desk clerk, he relied on the Administration's previous
9 finding that based on plaintiff's RFC and his description of his motel clerk job, he was able to
10 return to that work. AT 20, 44-45. The Administration's finding in that regard is consistent with
11 the job description of motel clerk in the Dictionary of Occupational Titles. It describes the job of
12 hotel or motel clerk as being light in exertion and involving various tasks such as greeting and
13 registering guests, issuing room keys, transmitting and receiving messages, and answering
14 inquiries. *See* United States Dept. of Labor, Employment and Training Administration,
15 *Dictionary of Occupational Titles*, 238.367-038. These job requirements are consistent with
16 plaintiff's RFC, and support the ALJ's finding at step four. There is substantial evidence to
17 support the ALJ's finding that plaintiff had the functional capacity to perform his past relevant
18 work.
19	Accordingly, the court finds that the ALJ's step four determination was based on
20 substantial evidence and should not be disturbed. Having determined plaintiff's RFC and
21 finding he was capable of performing his past relevant work, there was no need to proceed
22 beyond step four.
23 ////
24 ////
25 ////
26 ////

**V. CONCLUSION**

The court finds the ALJ's assessment is supported by substantial evidence in the record and based on the proper legal standards. Accordingly, plaintiff's motion for summary judgment is DENIED, the Commissioner's cross-motion for summary judgment is GRANTED, and the Clerk is directed to enter Judgment for the Commissioner.

DATED: March 3, 2008.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE